# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### AT CHARLESTON

| | | |
|---|---|---|
| **VISTA VIEW LLC, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION NO.** |
| | ) | **1:15-cv-15075** |
| | ) | |
| **v.** | ) | |
| | ) | **HON. JOHN COPENHAVER** |
| **AMTAX HOLDINGS 412, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

**MAY IT PLEASE THE COURT:**

NOW INTO COURT, through undersigned counsel, come defendants, AMTAX Holdings 412, LLC, AMTAX Holdings 523, LLC, AMTAX Holdings 162, LLC (collectively, the "AMTAX Entities"), Tax Credit Holdings I, LLC, and TCH II Pledge Pool, LLC (collectively, the "TCH Entities"), and, with a full reservation of rights, respectfully respond to the Complaint for Declaratory and Injunctive Relief, [R. Doc. No. 1] ("Complaint"), filed by Southmoor LLC, Vista View LLC, and Capital Heights LLC (collectively, the "Canel Entities")[1], and assert the following affirmative defenses and counterclaims. All allegations not expressly admitted or denied are specifically denied.

---

[1] Scott Canel is a member and the manager of Southmoor LLC, Vista View LLC, and Capital Heights LLC. These entities are collectively referred to as the "Canel Entities."

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Canel Entities fail to state a cause or right of action against the AMTAX Entities and/or tha TCH Entities.

### SECOND DEFENSE

The Canel Entities' claims are barred by their own intentional, reckless, and/or negligent misconduct, and/or quasi-offenses.

### THIRD DEFENSE

The Canel Entities' claims are barred by their own contractual breaches, defaults, and/or non-performance.

### FOURTH DEFENSE

The Canel Entities have not sustained any legally cognizable damages on the premises of their Complaint.

### FIFTH DEFENSE

The Canel Entities' claims are barred under principles of estoppel, waiver, and/or laches.

### SIXTH DEFENSE

The Canel Entities' claims are barred by the parole evidence rule and/or applicable statutes of fraud.

### SEVENTH DEFENSE

The AMTAX Entities and TCH Entities specifically plead the contents, terms, and conditions of all contracts and agreements governing the operations of Vista View Apartments LP, Capital Heights Townhomes LP, and Southmoor Hills LP, including without limitation, the Amended and Restated Agreements of Limited Partnership, as amended, governing the

Partnerships, the terms and conditions of which the AMTAX Entities and TCH Entities have fully satisfied.

## EIGHTH DEFENSE

The Canel Entities are not entitled to any award of actual damages, interest, or attorney's fees or costs against the AMTAX Entities or TCH Entities.

## NINTH DEFENSE

The AMTAX Entities and TCH Entities specifically reserve the right to file and assert any and all additional affirmative defenses that may subsequently come to their attention upon obtaining knowledge and/or information to justify a belief therein.

## ANSWER

AND NOW, further answering the separately enumerated paragraphs in the Complaint, the AMTAX Entities and TCH Entities further respond that:

1.

The allegations in Paragraph 1 of the Complaint do not pertain to or call for a response from the AMTAX Entities or the TCH Entities; however, in an abundance of caution, to the extent a response is required, all such allegations are denied.

2.

The allegations in Paragraph 2 of the Complaint are admitted insofar as AMTAX Holdings 412, LLC is an Ohio limited liability company and the Investor Limited Partner of Vista View Apartments L.P. ("Vista View"). All other allegations in Paragraph 2 are denied.

3.

The allegations in Paragraph 3 of the Complaint are admitted insofar as Tax Credit Holdings I, LLC is a Delaware limited liability company and the Special Limited Partner of Vista View. All other allegations in Paragraph 3 are denied.

4.

The allegations in Paragraph 4 of the Complaint are admitted insofar as Alden Pacific Asset Management, LLC ("Alden") is a Delaware limited liability company and the agent and authorized representative of the AMTAX Entities and the TCH Entities. All other allegations in Paragraph 4 are denied.

5.

The allegations in Paragraph 5 of the Complaint do not pertain to or call for a response from the AMTAX Entities or the TCH Entities; however, in an abundance of caution, to the extent a response is required, all such allegations are denied.

6.

The allegations in Paragraph 6 of the Complaint are admitted insofar as AMTAX Holdings 523, LLC is an Ohio limited liability company and the Investor Limited Partner of Capital Heights Townhomes LP ("Capital Heights"). All other allegations in Paragraph 6 are denied.

7.

The allegations in Paragraph 7 of the Complaint are admitted insofar as Tax Credit Holdings I, LLC is a Delaware limited liability company and the Special Limited Partner of Capital Heights. All other allegations in Paragraph 7 are denied.

8.

The allegations in Paragraph 8 of the Complaint are admitted insofar as Alden is a Delaware limited liability company and the agent and authorized representative of the AMTAX Entities and the TCH Entities. All other allegations in Paragraph 8 are denied.

9.

The allegations in Paragraph 9 of the Complaint do not pertain to or call for a response from the AMTAX Entities or TCH Entities; however, in an abundance of caution, to the extent a response is required, all such allegations are denied. All other allegations in Paragraph 9 are denied.

10.

The allegations in Paragraph 10 of the Complaint are admitted insofar as AMTAX Holdings 162, LLC is an Ohio limited liability company and the Investor Limited Partner of Southmoor Hills Apartments LP ("Southmoor"). All other allegations in Paragraph 10 are denied.

11.

The allegations in Paragraph 11 of the Complaint are admitted insofar as TCH II Pledge Pool, LLC is a Delaware limited liability company and the Special Limited Partner of Southmoor. All other allegations in Paragraph 11 are denied.

12.

The allegations in Paragraph 12 of the Complaint are admitted insofar as Alden is a Delaware limited liability company and the agent and authorized representative of the AMTAX Entities and the TCH Entities. All other allegations in Paragraph 12 are denied.

13.

The allegations in Paragraph 13 of the Complaint are admitted only insofar as Vista View Apartments L.P. is a limited partnership that was formed in or around 2004, its General Partner is

Vista View LLC, and its Management Agent is FMG Property Management Company LLC ("FMG"). All other allegations in Paragraph 13 are denied.

14.

The allegations in Paragraph 14 of the Complaint refer to documents that are the best evidence of their own contents, terms, and conditions. All other allegations in Paragraph 14 are denied.

15.

The allegations in Paragraph 15 of the Complaint are admitted insofar as Capital Heights Townhomes LP is a limited partnership that was formed in or around 2003, and its General Partner is Capital Heights LLC. All other allegations in Paragraph 15 are denied.

16.

The allegations in Paragraph 16 of the Complaint refer to documents that are the best evidence of their own contents, terms, and conditions. All other allegations in Paragraph 16 are denied.

17.

The allegations in Paragraph 17 of the Complaint are admitted only insofar as Southmoor Hills Apartments LP is a limited partnership that was formed in or around 2002, its General Partner is Southmoor LLC, and its Management Agent is Ten South. All other allegations in Paragraph 17 are denied.

18.

The allegations in Paragraph 18 of the Complaint refer to documents that are the best evidence of their own contents, terms, and conditions. All other allegations in Paragraph 18 are denied.

19.

The allegations in Paragraph 19 are admitted insofar as Alden is the successor of HCP Pacific Asset Management, LLC and the agent and authorized representative of the AMTAX Entities and the TCH Entities. All other allegations in Paragraph 19 are denied.

20.

The allegations in Paragraph 20 of the Complaint are admitted insofar as, on March 30, 2015, and May 18, 2015, in accordance with the partnership agreements governing the Partnerships, HCP Pacific Asset Management, LLC, in its capacity as the authorized representative of the AMTAX Entities and the TCH Entities, sent notices of default to the Canel Entities notifying them of various defaults under the partnership agreements. All other allegations in Paragraph 20 are denied.

21.

The allegations in Paragraph 21 of the Complaint are denied.

22.

The allegations in Paragraph 22 of the Complaint are admitted insofar as the Canel Entities deny having committed defaults under the partnership agreements.

23.

The allegations in Paragraph 23 are admitted insofar as the dispute between the parties involves defaults and misconduct by the Canel Entities dating back a number of years. All other allegations in Paragraph 23 are denied.

24.

The allegations in Paragraph 24 of the Complaint are denied.

25.

The allegations in Paragraph 25 of the Complaint refer to a document that is the best evidence of its own terms, contents, and conditions. All other allegations in Paragraph 25 are denied.

26.

The allegations in Paragraph 26 of the Complaint are denied.

27.

The allegations in Paragraph 27 of the Complaint are denied for lack of sufficient information to justify a belief therein.

28.

The allegations in Paragraph 28 of the Complaint are admitted as substantially correct.

29.

The allegations in Paragraph 29 of the Complaint refer to a document that is the best evidence of its own terms, contents, and conditions. All other allegations in Paragraph 29 are denied.

30.

The allegations in Paragraph 30 of the Complaint are denied.

31.

The allegations in Paragraph 31 of the Complaint are denied.

32.

The allegations in Paragraph 32 of the Complaint are denied.

33.

The allegations in Paragraph 33 of the Complaint refer to a document that is the best evidence of its own terms, contents, and conditions. All other allegations in Paragraph 33 are denied.

34.

The allegations in Paragraph 34 of the Complaint refer to a document that is the best evidence of its own terms, contents, and conditions, and further contains a legal conclusion for which no response is required. In an abundance of caution, to the extent a response is required, all allegations in this paragraph are denied.

35.

The allegations in Paragraph 35 of the Complaint are denied.

36.

The allegations in Paragraph 36 of the Complaint are denied.

37.

The allegations in Paragraph 37 of the Complaint are denied.

38.

The allegations in Paragraph 38 of the Complaint are denied.

39.

The allegations in Paragraph 39 of the Complaint are denied.

40.

The allegations in Paragraph 40 of the Complaint are denied.

41.

The allegations in Paragraph 41 of the Complaint are denied.

42.

The allegations in Paragraph 42 of the Complaint are denied.

43.

The allegations in Paragraph 43 of the Complaint are denied.

44.

The allegations in Paragraph 44 of the Complaint are denied.

45.

The allegations in Paragraph 45 are admitted insofar as this Court has jurisdiction over this dispute, but are otherwise denied.

46.

The allegations in Paragraph 46 of the Complaint are denied.

47.

The allegations in Paragraph 47 are denied except to admit that 28 U.S.C. § 2201 authorizes the Court to render a declaratory judgment in favor of either party.

48.

The allegations in Paragraph 48 of the Complaint are admitted insofar as venue is proper in this Court. However, this case should be transferred to the United States District Court for the Southern District of Ohio based on considerations of justice and convenience and consolidated with the case entitled, "*AMTAX Holdings 204, LLC et al. v. Scott I. Canel et al.*," Civil Action No. 1:15-cv-723, which was filed prior to this case and involves overlapping facts and legal issues.

49.

The allegations contained in the unnumbered "Conclusion" paragraph of the Complaint, including subparts (1) through (6), do not require a response. However, in an abundance of caution,

to the extent a response is required, the allegations in this paragraph, including subparts (1) through (6), are denied.

## COUNTERCLAIMS

Further responding, and with a full reservation of their rights to amend to add claims and parties following discovery, the AMTAX Entities and TCH Entities assert the following Counterclaims:

### I.     THE PARTIES

1.

Counterclaim-plaintiffs, AMTAX Holdings 162, LLC, AMTAX Holdings 412, LLC, and AMTAX Holdings 523, LLC (collectively, the "AMTAX Entities"), are limited liability companies. Their members are citizens of California, Colorado, Delaware, Massachusetts, New York, Tennessee, and Washington. None of the members of the AMTAX Entities are citizens of Illinois.

2.

Counterclaim-plaintiffs, Tax Credit Holdings I, LLC and TCH II Pledge Pool, LLC (collectively, the "TCH Entities"), are limited liability companies. Their members are citizens of California, Colorado, Massachusetts, and Tennessee. None of the members of the TCH Entities are citizens of Illinois.

3.

Counterclaim-defendant, Scott I. Canel, is a citizen of Illinois. Mr. Canel is the manager and a member of Southmoor LLC, Vista View LLC, and Capital Heights LLC. He is also the manager of Ten South Management Company LLC and FMG Property Management LLC.

4.

Counterclaim-defendants, Southmoor LLC, Vista View LLC, and Capital Heights LLC (collectively, the "Canel Entities"), are limited liability companies. Upon information and belief, their members are citizens of Illinois.

5.

Counterclaim-defendant, Ten South Management Company LLC ("Ten South"), is a limited liability company. Upon information and belief, its members are citizens of Illinois.

6.

Counter-claim defendant, FMG Property Management LLC ("FMG"), is a limited liability company. Upon information and belief, its members are citizens of Illinois.

7.

As the counterclaim-plaintiffs are not citizens of Illinois, and the counterclaim-defendants are citizens of Illinois, diversity of citizenship exists. 28 U.S.C. § 1332(a)(1).

## II.     JURISDICTION

8.

The counterclaim-plaintiffs seek a declaratory judgment regarding the Canel Entities' breaches of the agreements governing the Partnerships and the AMTAX Entities' right to remove the Canel Entities as the General Partners of the Partnerships for their failure to cure their defaults, as well as damages arising from the Canel Entities' breaches of the partnership agreements and of their fiduciary duties as General Partners of the Partnerships. The Canel Entities' misappropriations and breaches have resulted in damage to the viability of the counterclaim-plaintiffs' investments in the Partnerships and the projects owned by the Partnerships, including both the capital already

invested by the counterclaim-plaintiffs and their residual interests in the projects. The AMTAX Entities' investments alone far exceed $75,000 for each Partnership.

9.

This Court has jurisdiction over each of these Counterclaims pursuant to 28 U.S.C. § 1332, as the amount in controversy far exceeds $75,000 (both in its entirety and in connection with each Partnership), exclusive of interest and costs, and is between citizens of different states.

### III.  FACTUAL BACKGROUND

*A.*  *The Partnerships and the Rights and Obligations of the Partners*

10.

The Partnerships were created for the purpose of developing, owning, and operating affordable, multi-family housing complexes. The Partnerships are governed by partnership agreements that are largely identical:

- Southmoor Hills Apartments L.P. is governed by its Amended and Restated Agreement of Limited Partnership, dated effective as of June 1, 2002, as amended by its First Amendment, its Second Amendment, dated August 2004, and its Third Amendment, dated March 29, 2011;

- Vista View Apartments LP is governed by its Amended and Restated Agreement of Limited Partnership, dated effective as of June 1, 2005, as amended by its First Amendment, dated August 1, 2005, its Second Amendment, dated October 23, 2006, its Third Amendment, dated January 18, 2008, and its Fourth Amendment, dated October 14, 2010; and

- Capital Heights Townhomes LP is governed by its Amended and Restated Agreement of Limited Partnership, dated effective as of April 1, 2004, as amended by its First Amendment, dated January 27, 2006, and its Second Amendment, dated October 14, 2010; and

These agreements are collectively referred to as the "Partnership Agreements," and they spell out the rights and obligations of the partners of the Partnerships.

11.

Amendments to the Partnership Agreements must be in writing. A partner cannot waive a breach of the Partnership Agreements by inaction, nor can course of conduct among the partners amend the Partnership Agreements.

12.

Pursuant to the Partnership Agreements, the AMTAX Entities, in their capacity as Investor Limited Partners, made significant capital contributions to the Partnerships and own and control approximately 99.99% of the interests in the Partnerships. Pursuant to the Partnership Agreements, the AMTAX Entities are entitled to receive certain federal affordable housing tax credits allocated to the Partnerships, as well as various fees, repayments of advances, and distributions of cash flow from the Partnerships.

13.

As the Investor Limited Partners, the AMTAX Entities also enjoy certain rights under the Partnership Agreements related to the Partnerships, including the right to remove the General Partner upon the occurrence of certain events.

14.

As the Special Limited Partners, the TCH Entities made nominal capital contributions to the Partnerships but enjoy certain rights under the Partnership Agreements and are entitled to receive certain fees, repayments of advances, and distributions of cash flow from the Partnerships.

15.

As the General Partner of the Partnerships, the Canel Entities made only nominal capital contributions to the Partnerships. However, pursuant to the Partnership Agreements, they assumed certain duties in the day-to-day management and operation of the Partnerships in exchange for a

specified ownership interest in the Partnerships and certain, specified fees. They also assumed a fiduciary duty to the AMTAX Entities and the TCH Entities.

B. *Specific Rights and Obligations of the General Partners*

16.

The rights, powers, and duties of the General Partners, as well as restrictions on that authority, are set forth in Article VII of the Partnership Agreement governing Southmoor and Article VIII of the Partnership Agreements governing Vista View and Capital Heights, and are incorporated herein as if set forth in their entirety.

17.

In addition, Article XI of the Partnership Agreement governing Southmoor, and Article VIII, Section 8.17 of the Partnership Agreements governing Vista View and Capital Heights, set forth the General Partner's rights and obligations with respect to the designation of a third-party Management Agent.

18.

Among the enumerated duties of the General Partner is the General Partner's fiduciary obligation to manage the day-to-day operations of the Partnership. This includes, among other things, ensuring that the Partnership maintains required debt coverage ratios, the project maintains required occupancy levels, and the Management Agent of the Partnership performs its job satisfactorily.

19.

As to the Management Agent, the Partnership Agreements require the General Partner to remove the Management Agent upon the occurrence of certain events, including without limitation, where the Management Agent demonstrates repeated incompetence or malfeasance in the

management of the Partnership, in the case of Southmoor Hills, or fails to exercise reasonable care in the discharge of its duties and obligations as Management Agent, in the case of Vista View and Capital Heights. The Management Agent must also be removed where it is an affiliate of the General Partner and the General Partner is removed.

20.

In addition, pursuant to Article VIII, Section 8.18 of the Partnership Agreements governing Vista View and Capital Heights, the Management Agents of those Partnerships must be removed if requested by the Investor Limited Partner.

21.

For their performance of their duties, the General Partners and Management Agents are entitled to certain fees specified in the Partnerships Agreements, in the case of the General Partners as permitted by the financial health and subject to available cash flow of the Partnerships.

22.

But, pursuant to Section 7.10(E) of the Partnership Agreement governing Southmoor, and Section 4.01(jj) of the Partnership Agreements governing Vista View and Capital Heights, neither the General Partner nor any of its affiliates are entitled to any compensation, fees or profits from the Partnership in connection with the acquisition, construction, development or rent-up of the project or for the administration of the Partnership's business or otherwise except as specifically set forth in the Partnership Agreement or other Partnership documents.

23.

Relevant also to this case, pursuant to Section 7.1(B)(vi) of the Partnership Agreement governing Southmoor, the General Partner is prohibited from causing the Partnership "to make any loan or advance to any Person," including the General Partner and affiliates of the General Partner.

Similarly, pursuant to Section 8.02(a)(v) of the Partnership Agreements governing Vista View and Capital Heights, the General Partner "shall not . . . borrow from the Partnership or commingle Partnership funds with funds of any other Person," including the General Partner and/or affiliates of the General Partner.

24.

Pursuant to the Partnership Agreements, the General Partners have a fiduciary obligation to the Limited Partners of the Partnerships and a fiduciary duty to carry out their responsibilities as General Partners.

C.      *The Partnerships' Cash Flow*

25.

The management, application, and distribution of Partnership cash flow is prescribed and meticulously set forth in Section 6.2 of the Partnership Agreement governing Southmoor and Section 11.01 of the Partnership Agreements governing Vista View and Capital Heights. The distribution of cash flow is not subject to discretion, and it is the General Partners' duty to determine, apply and distribute cash flow in strict accordance with the Partnership Agreements.

26.

Pursuant to the Partnership Agreement governing Southmoor, Cash Flow may only be determined and distributed quarterly. Pursuant to the Partnership Agreements governing Vista View and Capital Heights, Cash Flow must be determined and distributed at least annually.

27.

The Partnership Agreements prohibit distribution of cash flow outside of the order and categories set forth in the Partnership Agreements.

D.    *Certain Rights of the Investor Limited Partners and Special Limited Partners*

28.

Certain rights of the Investor Limited Partners and/or Special Limited Partners are set forth in Article IV, Section 4.5 of the Partnership Agreement governing Southmoor and Article VIII, Section 8.16 of the Partnership Agreements governing Vista View and Capital Heights, including the right to remove the General Partner upon the occurrence of certain events.

29.

Pursuant to Article IV, Section 4.5(A)(iv) of the Partnership Agreement governing Southmoor, the Investor Limited Partner may, upon written notice, remove the General Partner for, among other things, "material misconduct, or failure to exercise any reasonable care with the respect to any material matter in the discharge of its duties and obligations as [General Partner]"; violation of "any material rights, powers, duties, representations, or warranties as set forth in Article VII" or "any material provision of [the Partnership Agreement]"; and/or failure to maintain the requisite debt coverage for the Partnership or occupancy levels for the project owned and operated by the Partnership.

30.

Pursuant to Article VIII, Section 8.16 of the Partnership Agreements governing Vista View and Capital Heights, the Investor Limited Partner and/or Special Limited Partner may, upon written notice, remove the General Partner for, among other things, "any intentional misconduct, gross negligence, malfeasance, fraud, act outside the scope of its authority, breach of its fiduciary duty, or any failure to exercise reasonable care with respect to any material matter in the discharge of its duties and obligations as General Partner," as well as for any material violation of the Partnership Agreement.

31.

The Canel Entities are the General Partners of the Partnerships and, for some time, have been taking unauthorized loans and advances from the Partnerships and paying themselves and/or their affiliates fees and amounts to which they were not entitled.  They have also committed various other defaults under the Partnership Agreements.

1.    Southmoor

32.

Southmoor Hills Apartments L.P. ("Southmoor") is a limited partnership that owns and operates an affordable, multi-family housing complex located in Charleston, West Virginia.  Its partners are:

- Southmoor LLC  – the General Partner;

- AMTAX Holdings 412, LLC – the Investor Limited Partner; and

- TCH II Pledge Pool, LLC – the Special Limited Partner.

All of the partners of Southmoor are parties to this suit.

33.

Earlier this year, partnership audits revealed that Southmoor LLC had collected and/or caused Southmoor to pay Southmoor LLC and its affiliate, Ten South, amounts to which they were not entitled, including excess management fees totaling $39,781;  a bank draft liability charged to the Partnership totaling $20,423; and accrued partnership management fees charged to the Partnership totaling $28,538.

34.

The counterclaim-defendants' misappropriation of such amounts from the Partnership reflects severe mismanagement of the Partnership and the project and has resulted in reduced Partnership cash flow to the detriment of the Limited Partners, and further threatens the viability of the Limited Partners' investments in the Partnership and the project.

35.

By letter dated March 30, 2015, the Limited Partners notified Southmoor LLC of these defaults under the Partnership Agreement and demanded that it cure the defaults. It did not do so.

36.

By letter dated May 18, 2015, the Limited Partners followed up on the uncured defaults, notified Southmoor LLC of additional defaults pertaining to project occupancy levels and debt coverage, and instructed Southmoor LLC to remove and replace its affiliate as the Partnerships' Management Agent.

37.

Although Southmoor LLC's defaults warranted its immediate removal as General Partner, the Limited Partners gratuitously allowed Southmoor LLC a reasonable period of time to cure the enumerated defaults. Even then, Southmoor LLC did not fully cure the defaults. Moreover, it continued to collect and/or make improper payments of Partnership monies, and it did not remove its affiliate as the Management Agent.

38.

While Southmoor LLC ultimately paid *some* amounts due to the Limited Partners of the Partnership, it never fully repaid or cured its prior defaults.

39.

Among other things, as of July 2015, when the Limited Partners most recently reviewed these issues with Mr. Canel, Southmoor LLC had paid to itself and/or its affiliate improper amounts and fees totaling over $400,000, including, as of July 31, 2015, $221,695 in improper bookkeeping fees; $72,983 in improper TRACS fees; $82,523 in various and unauthorized add-on fees; and $28,538 in accrued partnership management fees charged to the Partnership as a liability – all to which it was not entitled.

40.

In addition, Southmoor LLC has expressly refused to remove and replace its complicit affiliate, Ten South, as the Management Agent.

41.

By letter dated October 1, 2015, the Limited Partners gratuitously provided Southmoor LLC one last opportunity to cure its prior defaults and remove and replace the Management Agent. It did not do so, and, in fact, refused to do so, and expressly advised the Limited Partners that it would continue to take the unauthorized fees and monies from the Partnership.

2. <u>Vista View</u>

42.

Vista View Apartments L.P. ("Vista View") is a limited partnership that owns and operates an affordable, multi-family housing complex located in Charleston, West Virginia. Its partners are:

- Vista View LLC – the General Partner;

- AMTAX Holdings 412, LLC – the Investor Limited Partner; and

- Tax Credit Holdings I, LLC – the Special Limited Partner.

All of the partners of Vista View are parties to this suit.

43.

Earlier this year, partnership audits revealed that Vista View LLC had collected and/or caused Vista View to pay Vista View LLC and its affiliate, FMG, amounts to which they were not entitled, including excess management fees totaling $57,683 and accrued partnership management fees totaling $32,735 charged to the Partnership as a liability.

44.

The counterclaim-defendants' misappropriation of such amounts from the Partnership reflects severe mismanagement of the Partnership and the project and has resulted in reduced Partnership cash flow to the detriment of the Limited Partners, and further threatens the viability of the Limited Partners' investments in the Partnership and the project.

45.

By letter dated March 30, 2015, the Limited Partners notified Vista View LLC of these defaults under the Partnership Agreement and demanded that it cure the defaults. It did not do so.

46.

By letter dated May 18, 2015, the Limited Partners followed up on the uncured defaults and demanded that Vista View LLC cease and desist from continuing to take and pay unauthorized fees and monies from the Partnership, failure of which would result in a demand for FMG's immediate removal as the Partnership's Management Agent.

47.

While Vista View LLC ultimately paid *some* amounts due to the Limited Partners of the Partnership, it never fully repaid or cured its prior defaults. Moreover, it continued to collect and/or make improper payments of Partnership monies, and it did not remove its affiliate as the Management Agent.

48.

Among other things, as of July 2015, when the AMTAX Entities most recently reviewed these issues with Mr. Canel, Vista View LLC had paid to itself and/or its affiliate improper amounts and fees totaling over $450,000, including, as of July 2015, $294,994 in improper bookkeeping fees; $97,421 in improper TRACS fees; $87,913 in various unauthorized add-on fees; and accrued partnership fees charged to the Partnership totaling $32,735.

49.

In addition, Vista View LLC has expressly refused to remove and replace its complicit affiliate, FMG, as the Partnership's Management Agent.

50.

By letter dated October 1, 2015, the Limited Partners gratuitously provided Vista View LLC one last opportunity to cure its prior defaults and remove and replace the Management Agent. It did not do so, and, in fact, refused to do so, and expressly advised the Limited Partners that it would continue to take the unauthorized fees and monies from the Partnership.

4. Capital Heights

51.

Capital Heights Townhomes L.P. ("Capital Heights") is a limited partnership that owns and operates an affordable, multi-family housing complex located in Martinsburg, West Virginia. Its partners are:

- Capital Heights LLC – the General Partner;

- AMTAX Holdings 523, LLC – the Investor Limited Partner; and

- Tax Credit Holdings I, LLC – the Special Limited Partner.

All of the parties of Capital Heights are parties to this suit.

52.

Earlier this year, partnership audits revealed that Capital Heights LLC had collected and/or caused Capital Heights to pay Capital Heights LLC and its affiliate, Ten South, amounts to which they were not entitled, including unpermitted loans to the General Partner and/or its affiliates totaling $575,462; accrued partnership management fees totaling $16,864; excess management fees totaling $69,870; and payments out of order totaling $266,834.

53.

The counterclaim-defendants' misappropriation of such amounts from the Partnership reflects severe mismanagement of the Partnership and the project and has resulted in reduced Partnership cash flow to the detriment of the Limited Partners, and further threatens the viability of the Limited Partners' investments in the Partnership and the project.

54.

By letter dated March 30, 2015, the Limited Partners notified Capital Heights LLC of these defaults under the Partnership Agreement and demanded that it cure the defaults. It did not do so.

55.

By letter dated May 18, 2015, the Limited Partners followed up on the uncured defaults and demanded that Capital Heights LLC cease and desist from continuing to take and pay unauthorized fees and monies from the Partnership, failure of which would result in a demand for Ten South's immediate removal as the Partnership's Management Agent.

56.

While Capital Heights LLC ultimately paid *some* of the amounts due to the Limited Partners of the Partnership, it never fully repaid or cured its prior defaults. Moreover, it continued to collect

and/or make improper payments of Partnership monies, and it did not remove its affiliate as the Management Agent.

57.

Among other things, as of July 2015, when the AMTAX Entities most recently reviewed these issues with Mr. Canel, Capital Heights LLC had paid to itself and/or its affiliate improper amounts and fees totaling over $1,100,000, including, as of July 2015, over $700,000 in unpermitted loans to the General Partner and/or its affiliates; $266,834 in payments made out of order; $16,864 in accrued partnership management fees; $97,754 in improper bookkeeping fees; and $31,874 in improper TRACS fees.

58.

In addition, Capital Heights LLC has expressly refused to remove and replace its complicit affiliate, Ten South, as the Management Agent.

59.

By letter dated October 1, 2015, the Limited Partners gratuitously provided Capital Heights LLC one last opportunity to cure its prior defaults and remove and replace the Management Agent. It did not do so, and, in fact, refused to do so, and expressly advised the Limited Partners that it would continue to take the unauthorized fees and monies from the Partnership.

F.    *The Counterclaim-Defendants' Intention to Continue Misappropriating Partnership Funds*

60.

The Canel Entities have repeatedly failed and/or refused to cure their multiple defaults of the Partnership Agreements and breaches of their fiduciary duties.

61.

In addition, the Canel Entities' conduct violates loan documents as well as regulatory requirements and provisions governing the Partnerships.

62.

As noted above, by letter dated March 30, 2015, the Limited Partners advised the Canel Entities of their multiple defaults under the Partnership Agreements and demanded that they cure those defaults. They did not do so.

63.

By letter dated May 18, 2015, the Limited Partners followed up on the Canel Entities' uncured defaults and notified them of additional, continuing defaults.

64.

While the Canel Entities eventually paid some of the amounts due to the Limited Partners, they never fully repaid or cured their prior defaults. And, they continued to take and/or pay out Partnership funds at their whim. They also refused to remove and replace their complicit affiliates as the Partnerships' Management Agents.

65.

The Limited Partners repeatedly warned the Canel Entities of their defaults and misappropriations of Partnership assets and demanded that they cure them, but they did not.

66.

After months of the Canel Entities' failures to cure their prior defaults and honor their fiduciary obligations, and their continued taking of Partnership monies, the Limited Partners, by letter dated October 1, 2015, allowed the Canel Entities one last opportunity to cure their prior

defaults and remove their affiliates as the Management Agents. Even then, the Canel Entities did not do so, and, in fact, refused to do so.

67.

Not only have the Canel Entities refused to cure their prior defaults and remove their affiliates as the Management Agents, in their response to the AMTAX Entities' October 1, 2015, letter, they advised the AMTAX Entities that they do not intend to stop and *will continue to* take loans and advances from the Partnerships and pay themselves and their affiliate managers the management, bookkeeping, and TRACS fees at issue – even though the Partnership Agreements and the Management Agreements between the parties expressly prohibit the payments.

68.

Just recently, the Limited Partners learned that the Canel Entities and/or their affiliates took yet another $100,000 or more from the Partnerships in unauthorized loans and/or fees between August and November 2015 alone.

69.

The counterclaim-defendants' purposeful, continued breaches of the agreements between the parties and their fiduciary duties make removal of the Canel Entities as the General Partners of the Partnerships, and Ten South and FMG as the Management Agents, the only reasonable option for the Limited Partners.

**IV.**      <u>**CAUSES OF ACTION**</u>

*COUNT I – <u>The Canel Entities' Breaches of the Partnership Agreements</u>*

70.

The counterclaim-plaintiffs re-allege, re-aver, and reincorporate by reference all facts and conduct set forth in the foregoing Paragraphs 1 – 69 of their Counterclaims as if repeated herein.

71.

The Canel Entities, through their actions and omissions, materially breached their obligations to the counterclaim-plaintiffs under the Partnership Agreements.

72.

The Canel Entities breached the Partnership Agreements by, among other things, improperly paying themselves and/or causing the Partnerships to pay the Canel Entities and/or their affiliates fees and amounts to which they were and are not entitled, including unpermitted loans of partnership funds, accrued partnership management fees that should not have been paid, improper bookkeeping and TRACs fees, and other amounts to which they were not entitled; failing and refusing to remove their affiliate as the Management Agent; and, in one case, failing to maintain the occupancy levels and debt coverages required by the Partnership Agreements.

73.

The Canel Entities' misconduct and breaches of the Partnership Agreements have resulted in direct and proximate damages to the counterclaim-plaintiffs, including, without limitation, lost distributions of cash flow occasioned by the Canel Entities' improper payments and/or collection of Partnership funds. The counterclaim-plaintiffs are entitled to recover all damages to which they are entitled under the law for the Canel Entities' breaches of the Partnership Agreements, including damages foreseeable and unforeseeable.

*COUNT II – The Canel Entities' Breaches of Fiduciary Duty*

74.

The counterclaim-plaintiffs re-allege, re-aver, and reincorporate by reference all facts and conduct set forth in the foregoing Paragraphs 1 – 73 of their Counterclaims as if repeated herein.

75.

The Canel Entities owed the counterclaim-plaintiffs a duty of loyalty pursuant to the Partnership Agreements and the law.

76.

The Canel Entities materially breached their fiduciary duties to the counterclaim-plaintiffs when they improperly paid themselves and their affiliates fees and amounts to which they were not entitled and refused to remove their affiliates as the Management Agents of the Partnerships.

77.

All of the Canel Entities' breaches, as set forth above, caused the counterclaim-plaintiffs to suffer damages.

78.

The Canel Entities are liable to the counterclaim-plaintiffs for the damages suffered by them as a result of the Canel Entities' breaches of their fiduciary duty.

*COUNT III – <u>Declaratory Relief Against the Canel Entities</u>*

79.

The counterclaim-plaintiffs re-allege, re-aver, and reincorporate by reference all facts and conduct set forth in the foregoing Paragraphs 1 – 78 of their Counterclaims as if repeated herein.

80.

The Canel Entities were in breach of the Partnership Agreements based on the enumerated violations and failure to timely cure. Under the Partnership Agreements, a violation of the Partnership Agreements permits the AMTAX Entities as Investor Limited Partners to remove the Canel Entities as the General Partners of the Partnerships.

81.

All prerequisites for removal of the Canel Entities as the General Partners of the Partnerships have been met under the Partnership Agreements, but the Canel Entities deny that grounds for removal exist. Moreover, they have stated that they intend to continue their pattern of misconduct and the multiple breaches identified in these Counterclaims. Accordingly, a real and justiciable controversy exists and is ripe for determination by this Court.

82.

Based on the aforementioned terms of the Partnership Agreements, the Canel Entities' violations of the Partnership Agreements, the facts as alleged, and pursuant to 28 U.S.C. § 2201, the counterclaim-plaintiffs are entitled to a declaration that the AMTAX Entities have the right to remove the Canel Entities as the General Partners of the Partnerships upon written notice.

*COUNT IV – Tortious Interference with a Contract by Scott Canel, Ten South, and FMG*

83.

The counterclaim-plaintiffs re-allege, re-aver, and reincorporate by reference all facts and conduct set forth in the foregoing Paragraphs 1 – 82 of their Counterclaims as if repeated herein.

84.

Ten South and FMG are the Management Agents of the Partnerships.

85.

At all times pertinent to this suit, there have been contracts and legally protected interests that existed between the counterclaims-plaintiffs and the Canel Entities, namely the Partnership Agreements.

86.

Mr. Canel, Ten South, and FMG are and were aware of the contracts and legally protected interests between the counterclaim-plaintiffs and the Canel Entities.

87.

Mr. Canel, Ten South, and FMG intentionally and without justification caused, induced, and/or assisted in procuring breaches of the Partnership Agreements by the Canel Entities by, among other things, intentionally collecting and/or causing the Partnerships to pay amounts and fees to the Canel Entities and their affiliates to which they were not entitled and, in the case of Mr. Canel, refusing to remove Ten South and FMG as the Management Agents of the Partnerships.

88.

By authorizing and/or facilitating the actions referenced in the preceding paragraphs, Mr. Canel, Ten South, and FMG have caused the Canel Entities to breach the Partnership Agreements.

89.

The conduct of Mr. Canel, Ten South, and FMG has caused damages to the counterclaim-plaintiffs by breach of the Partnership Agreements. Such conduct constitutes tortious interference with a contract under West Virginia law, and Mr. Canel, Ten South, and FMG are liable for all resulting damages suffered by the counterclaim-plaintiffs.

90.

The AMTAX Entities and TCH Entities reserve the right to amend and supplement their Answer, Affirmative Defenses, and Counterclaims as discovery and their investigation of this matter progresses, including without limitation, the right to amend their Counterclaims to request an order of sequestration of Partnership assets and appoint a receiver.

# V.  PRAYER FOR RELIEF

WHEREFORE, the AMTAX Entities and TCH Entities pray that, after due proceedings are had, judgment be rendered in their favor and against the Scott Canel, the Canel Entities, Ten South, and FMG for all damages suffered, all of the aforementioned relief, and any other relief to which they are entitled, including:

1. Declaratory relief regarding the Canel Entities' multiple breaches of the Partnership Agreements and the AMTAX Entities' right to remove them as General Partners upon written notice;

2. Damages against the Canel Entities for breach of contract related to the Partnership Agreements;

3. Damages against the Canel Entities for breaches of their fiduciary duties;

4. Damages against Scott Canel, Ten South, and FMG for their intentional and tortious interference with the contracts between the counterclaim-plaintiffs and the Canel Entities;

5. An award of pre- and post-judgment interest, plus the defendants' costs, expenses, and attorneys' fees; and

6. Any and all other monetary, legal, or equitable relief to which the defendants may be entitled.

Respectfully submitted,

_____*Katherine B. Capito*_____
KATHERINE B. CAPITO (WV Bar #11633)
**DINSMORE & SHOHL, LLP**
Huntington Square
900 Lee St. East, Suite 600
Charleston, West Virginia 25301
Telephone: (304) 357-0900
Facsimile: (304) 357-0919
Email: katherine.capito@dinsmore.com

*– and –*

STEVEN F. GRIFFITH, JR., T.A. (La. 27232)
   *(Admitted Pro Hac Vice)*
LAURA E. CARLISLE (La. 33760)
   *(Admitted Pro Hac Vice)*
**BAKER DONELSON BEARMAN**
**CALDWELL & BERKOWITZ, PC**
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana  70170
Telephone:  (504) 566-5200
Facsimile:  (504) 636-4000
Email:  sgriffith@bakerdonelson.com
Email:  lcarlisle@bakerdonelson.com

*– and –*

W. PATTON HAHN (Ala. #HAH002)
   *(Admitted Pro Hac Vice)*
**BAKER DONELSON BEARMAN**
**CALDWELL & BERKOWITZ, PC**
420 Twentieth Street North
Wells Fargo Tower, Suite 1600
Birmingham, Alabama  35203
Telephone:  (205) 328-0480
Facsimile:  (205) 322-8007
Email:  phahn@bakerdonelson.com

**ATTORNEYS FOR DEFENDANTS**

| | | |
|---|---|---|
| **VISTA VIEW LLC, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION NO.** |
| | ) | **1:15-cv-15075** |
| | ) | |
| **v.** | ) | |
| | ) | **HON. JOHN COPENHAVER** |
| **AMTAX HOLDINGS 412, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of January, 2016, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record who have enrolled and registered for receipt of filings via the Court's ECF system, and I hereby certify that I have mailed by United States Mail, postage prepaid, the document to the following non-ECF participants:  NONE.

*Katherine B. Capito*
KATHERINE B. CAPITO